No. 3--06--0495

Filed April 27, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| In re S.B., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 04--JA--275 |
| | ) | |
| v. | ) | |
| | ) | |
| C.L., | ) | Honorable |
| | David J.) Dubicki, | |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

C.L. was the guardian of the minor, S.B. The trial court adjudged that S.B. was neglected because of an injurious environment while in C.L.'s care. In its dispositional order, the trial court, among other things, ordered C.L. to undertake certain tasks, and named the Department of Children and Family Services (DCFS) as the child's guardian.

In the trial court's second permanency review order after the dispositional order, the trial court changed the permanency goal and granted the State's motion to dismiss C.L. from the case for failure to make reasonable efforts toward the previous permanency

goal(705 ILCS 405/2--28(2)(B--1) (West 2004)). On appeal, C.L. argues that the trial court erred by (1) changing the permanency goal and (2) dismissing her from the case. The State contends that we lack jurisdiction to consider the trial court's change of the permanency goal because a permanency review order is not a final order. We (1) rule that we lack jurisdiction over the trial court's change of the permanency goal; and (2) affirm the trial court's dismissal of C.L. from the case.

BACKGROUND

S.B. is male and was born on January 20, 2000. S.B.'s mother is deceased, and his father is serving a 20-year prison sentence. C.L. is S.B.'s paternal aunt. The record does not reveal how or when C.L. became S.B.'s guardian.

On November 23, 2004, the State filed a juvenile petition alleging that S.B. was neglected because of an injurious environment while in C.L.'s care. In its petition, the State named C.L. as a respondent because C.L. was the child's guardian. The State alleged that (1) C.L. had left S.B. unattended during November 19 and 20, 2004; and (2) C.L.'s whereabouts were unknown from November 17 to 22, 2004. Initially, S.B. was taken into shelter care. Later, the trial court adjudged the child to be neglected.

On July 5, 2005, the court issued a dispositional order in which it (1) found C.L. to be unfit to care for S.B.; (2) made the minor a ward of the court; and (3) named DCFS as S.B.'s guardian.

2

In the dispositional order, the court found that while C.L. left S.B. unattended, she had gotten drunk and used crack cocaine. The court said that C.L. had failed to visit S.B. since he was taken into shelter care. The court ordered C.L. to undertake the following tasks: (1) execute all authorizations for releases requested by DCFS; (2) cooperate with DCFS; (3) obtain a drug and alcohol assessment; (4) successfully complete any course of treatment recommended as a result of the drug and alcohol assessment; (5) perform two random urine tests for drugs per month; and (6) submit to a psychological examination. In the dispositional order, the court denied the State's request to dismiss C.L. from the case. In C.L.'s appeal from the dispositional order, this court ruled that the trial court did not err in finding S.B. to be neglected. In re S.B., No. 3--05--0529 (2006) (unpublished order under Supreme Court Rule 23).

The trial court issued its first permanency review order on December 13, 2005. In this order, the court stated that the previous permanency goal of returning S.B. to C.L.'s home within one year (705 ILCS 405/2--28(2)(B) (West 2004)) had not been achieved. The record does not show how or when the previous permanency goal had been set. The court found that C.L. had failed to make reasonable efforts toward the permanency goal because she had "not done counseling or any tests, [and had] not followed recommendations of [the] psychological evaluation." The court established a new permanency goal of returning S.B. to

3

C.L.'s home pending a status hearing (705 ILCS 405/2--28(2)(B--1) (West 2004)). In this permanency review order, the court again denied the State's request to dismiss C.L. from the case.

On June 6, 2006, the court issued its second permanency review order. In this order, the court found that the prior permanency goal of returning S.B. to C.L.'s home pending a status hearing had not been achieved. The court stated that C.L. had failed to make reasonable efforts toward the most recent permanency goal because she had "miss[ed] drug tests, counseling [and] visits, [and had] refused [a] psychiatric evaluation as recommended by [the] psychologist" (See 705 ILCS 405/2--28(2)(B--1) (West 2004)). The court changed the permanency goal to substitute care pending the court's decision (705 ILCS 405/2--28(2)(C) (West 2004)). In this order, the court granted the State's request to dismiss C.L. from the case because of her failure to make reasonable efforts toward the permanency goals. C.L. appealed.

                              ANALYSIS

                    I. Change of Permanency Goal

C.L. submits that the trial court erred by changing the permanency goal in its second permanency review order. The State argues that we lack jurisdiction to review this issue because a permanency review order is not a final order.

With exceptions that are inapplicable to this case, an appellate court's jurisdiction is limited to review of a trial

4

court's final judgment.  155 Ill. 2d R. 301; <u>Flores v. Dugan</u>, 91 Ill. 2d 108, 435 N.E.2d 480 (1982); <u>In re Tiona W.</u>, 341 Ill. App. 3d 615, 793 N.E.2d 105 (2003).  Permanency review orders are not final orders, and therefore an appellate court lacks jurisdiction to review an issue regarding a permanency review order.  <u>In re V.M.</u>, 352 Ill. App. 3d 391, 816 N.E.2d 776 (2004).

In the present case, C.L. is challenging the trial court's change of permanency goal in its second permanency review order.  Under <u>V.M.</u>, the second permanency review order was not a final order, and therefore we do not have jurisdiction to review this issue.  Consequently, we need not consider this question further.

## II. Dismissal from the Case

C.L. contends that the trial court erred by dismissing her from the case.

Initially, we note that we have jurisdiction over this issue. In <u>In re Winks</u>, 150 Ill. App. 3d 657, 502 N.E.2d 35 (1986), the court ruled that a trial court's order dismissing a party as a respondent is a final order as to that party.  In this case, the trial court's order dismissing C.L. as a party was a final order regarding her.  Thus, we have jurisdiction to consider this question.  See 155 Ill. 2d R. 301; <u>Flores</u>, 91 Ill. 2d 108, 435 N.E.2d 480; <u>Tiona W.</u>, 341 Ill. App. 3d 615, 793 N.E.2d 105.

Our resolution of C.L.'s issue concerns our interpretation of section 1--5(2)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/1--5(2)(a) (West 2004)).  The section states, "Though not

5

appointed guardian or legal custodian or otherwise made a party to the proceeding, any current or previously appointed foster parent or relative caregiver, or representative of an agency or association interested in the minor has the right to be heard by the court, but does not thereby become a party to the proceeding." 705 ILCS 405/1--5(2)(a) (West 2004). Interpretation of a statutory provision is a question of law, which we review de novo. In re Jaime P., 223 Ill. 2d 526, 861 N.E.2d 958 (2006).

In re A.K., 250 Ill. App. 3d 981, 620 N.E.2d 572 (1993), concerned the dismissal of a presumed father from a juvenile case. The paternity of the child was presumed because the minor was born during the marriage. Later, the presumed father was determined not to be the child's biological father, and he was dismissed from the juvenile case. The A.K. court examined an earlier version of section 1--5(2)(a) that was essentially similar to the present version of the statute. The court in A.K. ruled that under the statute, the presumed father had the right to be heard by the trial court in the juvenile matter, but affirmed the trial court's dismissal of the presumed father as a party to the case.

In the instant case, C.L. was S.B.'s guardian at the time the State filed its original juvenile petition alleging that the child was neglected. At that time, C.L. was named as a respondent in the petition. In the dispositional order, DCFS was appointed as S.B.'s guardian, ending C.L.'s guardianship of the child. C.L.

6

was dismissed from the case in the second permanency review order after the dispositional order.

At the time of the dismissal, C.L. was no longer S.B.'s guardian, but she was a previously appointed relative caregiver. Thus, under section 1--5(2)(a), C.L. had the right to be heard by the court concerning the juvenile matter. See 705 ILCS 405/1--5(2)(a) (West 2004); A.K., 250 Ill. App. 3d 981, 620 N.E.2d 572. However, she did not have the right to be a party to the proceedings. See 705 ILCS 405/1--5(2)(a) (West 2004); A.K., 250 Ill. App. 3d 981, 620 N.E.2d 572. Therefore, we hold that the trial court did not err as a matter of law by dismissing C.L. from the case in the second permanency review order after the dispositional order. See 705 ILCS 405/1--5(2)(a) (West 2004); A.K., 250 Ill. App. 3d 981, 620 N.E.2d 572.

Furthermore, we note that the trial court exercised an abundance of patience with C.L. after the court appointed DCFS as the child's guardian. Even though not required to do so by statute, the trial court gave C.L. several opportunities to complete tasks in order to have S.B. returned to her care. The record shows that C.L. failed to complete the tasks. C.L.'s failure to complete the court-ordered tasks supported the trial court's decision to dismiss her from the case.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Peoria County circuit court dismissing C.L. as a party to this case.

Affirmed.

SCHMIDT and CARTER, JJ., concur.