Opinion filed June 29, 2022

THIRD DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 96 CR 11508 |
| ANTHONY ENGLISH, | ) ) | The Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Anthony English, age 20 at the time of the relevant offense, appeals from the trial court's order denying him leave to file a successive *pro se* postconviction petition. Following a jury trial, defendant was convicted of first degree murder in the November 25, 1995, killing of Keith Lewis. The trial court found that because defendant had been convicted of first degree murder in a previous case regarding a separate killing committed when defendant was over 18 and again in this case, defendant was eligible to receive the death penalty. Defendant waived his right to a jury for his capital sentencing hearing. The trial court sentenced defendant to natural life in prison.

¶ 2    On this appeal, defendant argues that the trial court erred in denying him leave to file a successive postconviction petition. Defendant argues that he has established the cause and prejudice necessary to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Defendant argues on appeal that his life sentence violates the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), as applied to him, because he was only 20 years old at the time of the offense and his youth was not considered during sentencing.

¶ 3    For the following reasons, we affirm the decision of the trial court.

¶ 4                                              BACKGROUND

¶ 5                                            I. Evidence at Trial

¶ 6    On November 25, 1995, Keith Lewis was shot to death in West Garfield Park. Witness Keith Dickerson testified that he was walking to a store in West Garfield Park with his father, J.C. Orsby, his cousin, William Brown, the victim, and two others, when he observed defendant, who was part of the New Breed gang, driving in the neighborhood. Dickerson, the victim, and one other person who was walking with the group were members of the Gangster Disciples gang. The street that the group was walking down served as the boundary between the territory claimed by the Gangster Disciples gang and the territory claimed by the New Breed gang. Dickerson knew defendant because they had grown up together. Dickerson observed defendant's vehicle turning around and stopping before defendant and two others emerged from the vehicle. Defendant and the two others verbally confronted the victim and those with him from across the street and then crossed the street toward the group. Dickerson observed defendant approach the victim and attempted to strike him. The victim did not attempt

to strike defendant in return but instead turned to walk away. Defendant then shot the victim in the back twice: once after the victim turned to walk away and again after he fell to the ground. Dickerson only informed law enforcement officers of what he had observed after he was, himself, arrested for armed robbery about 3½ months later. Dickerson testified that he had not come forward earlier for fear of retribution from defendant. Dickerson's testimony was corroborated by Orsby, one of the other people walking in the group.

¶ 7        Witness Joshua Cole, who also belonged to the New Breed gang, testified that he observed defendant in the area moments before the shooting took place. Defendant asked Cole to assist him attacking the group. Cole declined to assist. Cole heard the shots, then observed defendant emerging from a nearby alley jogging. Defendant asked Cole for a ride and mentioned that he was carrying a gun. Cole refused. Cole also testified in defendant's prior trial for the murder of Bertram Scarver. Cole agreed to testify in the Scarver case after the State agreed to pay for his family to move out of the neighborhood and to pay their first month's rent at their new location.

¶ 8        Detective Daniel McWeeny testified that he investigated both the murder of Bertram Scarver and the murder of the victim in the case at bar. Detective McWeeny testified that the same gun was involved in both shootings. Detective James Treacy, a firearms technician with the Chicago Police Department, testified that the bullets removed from the bodies of Scarver and the victim were fired from the same gun.

¶ 9        After the State had rested, defendant requested a continuance because Brown was meant to be a defense witness but was not present in court. The State informed the court that Brown had not been subpoenaed to appear on that day and that he had expressed to police that he did not want to become involved in the case. The trial court denied the request for continuance.

¶ 10    The jury subsequently found defendant guilty of first degree murder.

¶ 11                                    II. Sentencing

¶ 12    Defendant waived his right to a jury to determine whether the death penalty should be imposed. Both parties stipulated defendant's date of birth, that defendant had been convicted of the first degree murder of Scarver and the first degree murder of Lewis, and that defendant was therefore eligible for the death penalty. The State presented in aggravation evidence of defendant's prior criminal history, including both juvenile and adult convictions. The parties further stipulated to a pending case regarding alleged possession of contraband in a penal institution. In aggravation, the State called Detective William Whalen, who testified that defendant was involved in, but never charged in, a third murder. The parents of the victim in the case at bar gave victim impact statements. Defendant presented no evidence in mitigation and did not speak on his own behalf in allocution.

¶ 13    During sentencing, the trial court noted that defendant had no history of abuse, no history of physical or mental illness, nor any other mitigating factors. The trial court considered defendant's lack of remorse, defendant's criminal history, the victim impact statements, and the ongoing case against defendant regarding possession of contraband. The trial court noted that defendant had no excuse of intoxication or compulsion and that the behavior was not out of character for him. The court sentenced defendant to life in prison.

¶ 14                       III. Appellate and Postconviction Proceedings

¶ 15    On appeal, defendant challenged the sufficiency of the evidence against him and argued that the court's denial of his request for a continuance deprived him of a fair trial. This court affirmed the trial court's order. *People v. English*, 303 Ill. App. 3d 1098 (1999) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16      Defendant filed his initial postconviction petition under the Act on February 22, 2001, in which he argued that he was deprived of his sixth amendment right to effective assistance of counsel (U.S. Const., amend. VI) because of errors on the part of defense counsel, that his fourth amendment rights (U.S. Const., amend. IV) were violated by a deliberate and unjustifiable delay by police in obtaining a warrant for his arrest, that his fourteenth amendment rights (U.S. Const., amend. XIV) were violated because the State knowingly allowed testimony it knew or should have known was false. The trial court dismissed the petition after a second-stage proceeding without any specified reasoning. On appeal, this court found that defendant had made a substantial showing of a violation of his constitutional rights and remanded the case for third-stage proceedings. *People v. English*, 376 Ill. App. 3d 1137 (2007) (table) (unpublished order under Illinois Supreme Court Rule 23). Upon remand the trial court dismissed the petition a second time because it found the defendant's witnesses "wholly lacking in credibility." On the second appeal, this court affirmed the decision of the trial court. *People v. English*, 406 Ill. App. 3d 943 (2010).

¶ 17      Defendant filed a petition for writ of *habeas corpus* in the circuit court of Cook County in 2017, alleging prosecutorial misconduct. On April 6, 2017, the trial court denied defendant's *habeas corpus* petition as without merit. On appeal, this court affirmed the denial. *People v. English*, No. 1-17-1893 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c))

¶ 18      On May 14, 2020, defendant submitted his second successive postconviction petition, which is the petition relevant to the case at bar, without requesting leave to file. In his petition, he makes five claims. First he claims that his fourteenth amendment right to a fair trial (U.S. Const., amend. XIV) was violated because the state used evidence of prior crimes to obtain a

conviction. Second, he claims prosecutorial misconduct in the form of witness tampering. Third, he claims ineffective assistance of counsel on the part of his trial counsel. Fourth, he claims that the State's decision to pursue a first degree murder charge rather than a lesser charge violated the eighth amendment bar against cruel and unusual punishment (U.S. Const., amend. VIII), and also violated his fourteenth amendment right to fundamental fairness (U.S. Const., amend. XIV). Fifth, he claims that the trial court's decision to sentence him, as a youthful adult offender, to a natural life sentence constituted a disproportionate sentence under the eighth amendment (U.S. Const., VIII). On April 8, 2021, the trial court denied defendant leave to file a successive postconviction petition without prejudice "for now" in an oral ruling, deeming all but his disproportionate sentencing claim "wholly uncompelling" and inviting him to refile the petition "based on [the] Illinois Supreme Court case of *People v. House* when decided." Defendant filed a motion to file a late notice of appeal on May 28, 2021, which was granted by this court on June 23, 2021.

¶ 19                                                    ANALYSIS

¶ 20        Defendant appeals with regard to only the fifth of his five arguments in the petition: that the trial court's sentence violated the eighth amendment as applied to him, because the trial court did not consider his youth when determining his sentence. Defendant further argues that his sentence violates the proportionate penalties clause of the Illinois Constitution for the same reason. Defendant argues that his postconviction petition sufficiently established the cause and prejudice necessary to a successive postconviction petition and that the trial court therefore erred in denying him leave to file the petition.

¶ 21        The State argues in response that the trial court's order denying defendant leave to file his successive postconviction petition without prejudice was not a final order and is therefore

6

nonappealable and this court has no jurisdiction to hear this appeal. The State further argues that, even if this court has jurisdiction to hear this appeal, defendant did not raise his proportionate penalties clause argument in the postconviction petition and the issue is therefore forfeited on appeal. Lastly, the State argues that, even if this court has jurisdiction and even if defendant's proportionate penalties clause was not forfeited, defendant failed to make the requisite showing of cause and prejudice for a successive postconviction petition.

¶ 22                                    I. Jurisdiction

¶ 23        The State argues that this court lacks jurisdiction to hear the instant appeal because the order being appealed was not a final judgment and is therefore not appealable.

¶ 24        Our supreme court has stated that the ascertainment of a court's own jurisdiction is one of the "most important tasks of an appellate court panel when beginning the review of a case." *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal."); *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998) ("A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action."). The question of whether we have jurisdiction over the instant appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

> "Jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. [Citations.] A judgment is final for appeal purposes if it determines the litigation on the merits or

some definite part thereof so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989).

¶ 25     A final judgment is one which "fixes absolutely and finally the rights of the parties in the lawsuit." *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 119 (1978). In the case at bar, the State cites to *Flores v. Dugan*, 91 Ill. 2d 108, 114 (1982), for the proposition that a dismissal of a complaint without prejudice, such as the trial court's dismissal in this case, is not generally final and appealable. Defendant argues that while that may be the case, generally, it is not the case with denial of leave to file postconviction petitions under the Act. The Act, in the case of a defendant facing imprisonment, provides two options to a trial court presented with a postconviction petition:

"§ 122-2.1. (a) Within 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section.

\*\*\*

(2) If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry.

(b) If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122-4 through 122-6. \*\*\* Continuances may be granted as the court deems appropriate." 725 ILCS 5/122-2.1 (West 2018).

¶ 26    Defendant argues that the language of section 122-2.1(a)(2) renders the trial court's order in this case final, despite the trial court's use of the phrase "without prejudice." However, this argument fails to consider that the instant appeal concerns a *successive* postconviction petition governed by section 122-1(f), which provides:

"[O]nly one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2018).

¶ 27    Our supreme court has held that the 90-day window provided for in section 122-2.1 does not apply to successive postconviction petitions at the leave to file stage, as those petitions cannot be considered filed until leave to file has been granted. *People v. LaPointe*, 227 Ill. 2d 39, 44 (2007). Similarly, the fact that defendant's successive postconviction petition had not yet been filed at the time of the trial court's order means that the trial court was not required to submit an order pursuant to section 122-2.1 and therefore the order issued was not rendered final by that provision.

¶ 28    The only other argument advanced by defendant suggesting that this court has jurisdiction in the case at bar is that the trial court should not have dismissed the case without prejudice because although the supreme court decision in *People* v. *House*, 2021 IL 125124, was pending at the time, this court's appellate decision in that case was controlling law. See *People v. House,* 2019 IL App (1st) 110580-B. We agree that the appellate decision in *House* controlled at the time and that the trial court was bound to follow it. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539 (1992) (holding that decisions of appellate courts are binding on circuit courts). In rendering the oral ruling in the case, the trial court stated: "I don't believe that right

now there's any case law in Illinois that would get a 20-year-old released since he was outside *** *Miller*, or even the *House* case." This statement evinced the trial court's consideration of existing case law, including our decision in *House* and our conclusion that defendant's eighth amendment claim had no merit under that body of law. The trial court invited defendant to refile after *House* was decided. The State argues in its brief and at greater length at oral argument, that under the 4 to 3 decision of our supreme court in *Flores*, in proceedings civil in nature, such as those under the Act, an invitation to refile after a dismissal without prejudice renders the decision non-final and leaves this court without jurisdiction to hear an appeal. *Flores*, 91 Ill. 2d at 114; see also *People v. Johnson*, 191 Ill. 2d 257 (2000) (postconviction proceedings are civil in nature). However, the court's finding in *Flores* concerns a dismissal for want of prosecution and relies on the fact that, in *Flores*, the plaintiff had an absolute statutory right to refile within one year and therefore was not prejudiced by the trial court's dismissal for want of prosecution. *Flores*, 91 Ill. 2d at 112-13. The Act provides no such right to refile. 725 ILCS 5/122-1 *et seq.* (West 2018). Should the legal viability of defendant's claim be altered by the outcome of *House*, as he suggests by citing it in his proportionate penalties argument on appeal, that fact would tend to show cause for not raising the argument in a prior petition and thereby would provide part of the basis for another successive petition, but would establish no cause to reraise the arguments made in the petition in the case at bar. Accordingly, even under the *Flores* prejudice analysis, the State's argument that the trial court's dismissal without prejudice is an unappealable nonfinal order fails. None of defendant's rights went unaddressed in the decision, and nothing is left outstanding; the trial court's order is therefore final, and we have jurisdiction to hear this appeal.

¶ 29                                    II. Successive Postconviction Petition

¶ 30        In the case at bar, defendant filed a successive postconviction petition pursuant to the Act. The Act provides a statutory remedy for criminal defendants who claim that their constitutional rights were violated at trial or at sentencing. *House*, 2021 IL 125124, ¶ 15 (the Act permits inquiry into constitutional issues relating to conviction or sentence). Although our supreme court has made clear that the Act contemplates only one postconviction proceeding, "[n]evertheless, [the supreme] court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed." *People v. Edwards*, 2012 IL 111711, ¶ 22; 725 ILCS 5/22-1(f) (West 2018). To file a successive petition, a defendant must establish either (1) cause for not filing earlier and prejudice or (2) actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23.

¶ 31        In the instant case, defendant did not file a motion for leave to file a successive postconviction petition alleging cause and prejudice, "[n]onetheless, this court has held that the trial court may rule on a successive postconviction petition where leave to file has not been sought when documents submitted by a petitioner supply an adequate basis to determine whether the petitioner has sufficiently alleged cause and prejudice." *People v. Sanders*, 2016 IL 118123, ¶ 25 (citing *People v. Tidwell*, 236 Ill. 2d 150, 152 (2010)). There is no impediment to an appellate review of such a decision. *Tidwell*, 236 Ill. 2d at 162.

¶ 32        A defendant is required to demonstrate only "a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24. To show cause, a defendant must identify an objective factor that impeded his ability to raise the claim in his initial petition. *People v. Davis*, 2014 IL 115595, ¶ 14. To show prejudice, a defendant must demonstrate that the claim so infected the trial that the resulting conviction or sentence violated due process. *Davis*, 2014

IL 115595, ¶ 14. At this early leave-to-file stage, the petitioner is not required to make the "substantial showing" that will later be required at a second-stage hearing after counsel is appointed. *People v. Robinson*, 2020 IL 123849, ¶ 58. "[L]eave of court to file a successive postconviction petition should be denied only where it is clear from a review of the petition and attached documentation that, as a matter of law, the petitioner cannot set forth a colorable claim ***." *Sanders*, 2016 IL 118123, ¶ 24.

¶ 33                                    A. Forfeiture

¶ 34        In this appeal, defendant renews only his argument that his sentence violates the eighth amendment, as applied to him, under *Miller*. Defendant adds a new argument not raised in the postconviction petition, that his sentence also violates the proportionate penalties clause of the Illinois Constitution. The State argues, citing *Dorsey*, that a proportionate penalties claim not raised in the postconviction petition cannot be raised for the first time on appeal. *People v. Dorsey*, 2021 IL 123010, ¶ 70 (citing *People v. Jones*, 213 Ill. 2d 498, 505 (2004)). *Jones* established that our supreme court has interpreted section 122-3 of the Act to mean exactly what it says: "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is [forfeited]." 725 ILCS 5/122-3 (West 2018); see also *Jones*, 213 Ill. 2d at 504. *Dorsey* provides an example of the holding in *Jones* being applied to a situation very similar to the one in the case at bar. *Dorsey*, 2021 IL 123010.

¶ 35        In both *Dorsey* and the case at bar, the defendants raised eighth amendment claims under *Miller*. *Dorsey*, 2021 IL 123010 ¶ 23. The defendant in *Dorsey* argued on appeal to our supreme court that his appellate brief raised a proportionate penalties claim. *Dorsey*, 2021 IL 123010 ¶ 71. Our supreme court found that since the defendant merely made a one-sentence reference to the proportionate penalties clause and cited to the Illinois Constitution once during

his eighth amendment argument, without any explicitly captioned portion of his brief signaling a proportionate penalties argument, the claim was forfeited. *Dorsey*, 2021 IL 123010 ¶ 71. In the case at bar, the defendant makes less of a showing than the defendant in *Dorsey*: he does not reference the Illinois Constitution at all in his postconviction petition and makes no reference to the proportionate penalties clause. The fact that the analysis in *Dorsey* was at the supreme court level and concerned whether the argument was raised on appeal makes no difference in the applicability of section 122-3 to the case at bar. The *Dorsey* opinion notes that the State did not forfeit the right to raise the issue of forfeiture before the supreme court because defendant failed to "clearly and plainly establish that he is raising the issue in the appellate court." *Dorsey*, 2021 IL 123010 ¶ 72. Here, defendant has clearly and plainly established that he is raising the issue in the appellate court, the State has accordingly raised the issue of forfeiture, and we agree that defendant's proportionate penalties claim is forfeited.

¶ 36        Defendant addresses the eighth amendment jurisprudence around *Miller* at some length in his postconviction petition and details some of the science concerning the development of the brain of people of his age, but he does so entirely within the context of his eighth amendment argument and he makes no mention whatsoever of the proportionate penalties clause or of the body of law that has developed around it with regard to youthful offenders such as him. The defendant cites to *People v. Weathers*, 2015 IL App (1st) 133264, ¶22, for the proposition that constitutional violations alleged in a postconviction petitions should be construed liberally. While that is the case, if such a liberal interpretation was insufficient in *Dorsey*, where the defendant made more explicit reference to the proportionate penalties clause, we cannot find that it is sufficient here. Accordingly, we must agree with the State that defendant's

proportionate penalties claim has been forfeited. As a result, we will address only the eighth amendment claim.

¶ 37                                                 B. Prejudice

¶ 38        In the case at bar, defendant did not directly allege prejudice whatsoever. Instead, he argued in his postconviction petition that the rule put in place by *Miller v. Alabama*, 567 U.S. 460, 470 (2012), that declares mandatory life sentences for juvenile offenders unconstitutional under the eight amendment should apply to him as well, despite the fact that he was 20 years old at the time of the offense. In his petition, he described some scientific evidence showing that the brains of 20-year-olds, such as himself, are still developing and therefore are more similar to the brains of juveniles than those of full-grown adults whose brains have completely developed. Defendant also detailed in his petition his diagnosis of bipolar disorder and his potential for rehabilitation. We therefore examine whether the case law referenced, the scientific evidence, or the other facts presented by defendant are sufficient to establish prejudice.

¶ 39        The fact that *Miller* applies only to juveniles, specifically those under the age of 18, was reaffirmed by our supreme court in *People v. Harris*, 2018 IL 121932, ¶ 61. In *Harris*, our supreme court made clear that the line drawn in *Miller* was based in the traditional definition of the cutoff between juvenile status and adult status, not in the evolving science cited by both the defendant there and the defendant in the case at bar, therefore new science does not necessarily alter that traditional line. *Harris*, 2018 IL 121932 ¶ 60. Similarly, since the line drawn by *Miller* is one firmly based in age, defendant's claims about mental illness and potential for rehabilitation also have no impact on his argument under *Miller*. It should be noted that defendant made no arguments about his potential for rehabilitation at sentencing.

14

Since the scientific evidence and other facts presented by defendant are not relevant to the legal analysis under *Miller* and the eighth amendment, consideration of defendant's youth at sentencing would only have been required under the eighth amendment if defendant was under 18 at the time of the offense. Defendant acknowledged this age bar against his *Miller* claim in his appellate brief. Since defendant was 20 years old at the time of the offense, the constitutional violation alleged did not occur, and therefore defendant cannot possibly show that the claim so infected the trial that the resulting conviction or sentence violated due process. For lack of evidence that the traditional line between juvenile and adult has moved to a point above the age of 20, defendant's age at the time of the offense, defendant has failed to make even the *prima facie* showing of prejudice necessary to advance to second-stage proceedings. Since both cause and prejudice must be established for a successive postconviction petition to reach the second stage, we need not examine the element of cause.

¶ 40                                              CONCLUSION

¶ 41       For the foregoing reasons, we affirm the ruling of the trial court denying defendant's successive postconviction petition.

¶ 42       Affirmed.

2022 IL App (1st) 210725

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 96 CR 11508; the Hon. James B. Linn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Miriam Sierig, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Paul E. Wojcicki, and Amy McGowan, Assistant State's Attorneys, of counsel), for the People. |